# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re: | |
| **CHARLES H. WILEY and** | **Bankruptcy Case** |
| **PAULA J. WILEY,** | **No. 11-02462-JDP** |
| **Debtors.** | |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Matthew Schriver and Patrick Geile, FOLEY FREEMAN, PLLC, Boise, Idaho, Attorneys for Debtors.

Jeremy Gugino, Boise, Idaho, Chapter 7 Trustee.

### *Introduction*

The chapter 7[1] trustee, Jeremy Gugino ("Trustee"), objected to the

_____

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

claim of exemption in an annuity contract made by Debtors Charles

Howard and Paula Jean Wiley.  Dkt. No. 17.  Debtors responded to the

objection.  Dkt. No. 23.  The parties filed a stipulation as to the relevant

facts, Dkt. No. 45, and briefed the issues, Dkt. Nos. 46 and 47, and the

Court conducted a hearing concerning Trustee's objection on February 12,

2012, Dkt. No. 49.  After hearing the arguments of counsel, the issues were

taken under advisement.  Having considered the record and the parties'

submissions, as well as the applicable law, this Memorandum constitutes

the Court's findings of fact, conclusions of law, and disposes of the issues.

Fed. R. Bankr. P. 7052; 9014.

### *Facts*[2]

On April 12, 2011, Debtor Paula Wiley purchased a Dominator Select

Annuity Contract ("Annuity") from Allianz Life Insurance Company of

North America ("Allianz").  Dkt No. 45, Ex. A.  According to the terms of

---

[2] These facts are taken from the stipulation filed by the parties and its
attachments.

MEMORANDUM OF DECISION – 2

the Annuity, Paula[3] is the owner, her husband Charles is the primary

beneficiary, and Debtors' minor children are the contingent beneficiaries.

*Id.* The Annuity was a single premium preferred annuity; Debtors paid a

$25,000 cash premium. *Id*.

The Annuity documents contain a section entitled "Personal

Suitability Summary," which recites certain questions, and Debtors'

responses to those questions, as follows:

| | | |
|---|---|---|
| Question: | "How do you anticipate taking distributions from this annuity?" | |
| Answer: | "Free/systematic withdrawals or income rider." | |
| Question: | "When do you anticipate taking your first distribution from this annuity?" | |
| Answer: | "Between six and nine years." | |

*Id*.

While the Annuity's terms offered Debtors a variety of options as to

when annuity payments to them would begin, and correspondingly, how

much those payments would be, when they filed their bankruptcy petition

on August 12, 2011, Debtors had not elected any payment option.  Among

---

[3] For clarity, the Court refers to Debtors by their first names.  No disrespect is intended.

MEMORANDUM OF DECISION – 3

the options provided in the Annuity, for example, was one allowing

Debtors to obtain a "Full Surrender," which would entitle them to receive

immediate payment of the "Cash Surrender Value."  Under this payment

option, had they chosen to do so, Debtors could have recovered the full

amount of their investment in the Annuity in one lump sum, minus a

modest "Surrender Charge."  *Id*.  The "Surrender Charge" is six percent for

withdrawals made during the first year.  *Id*.  It decreases to five percent in

year 2, four percent in year 3, and drops to zero percent in years 4+.  *Id*.

Other partial surrender options were also available to Debtors.  *Id*.  Indeed,

the Annuity provides that Debtors could "request a Surrender at any time"

simply by a notice to Allianz.  *Id*.

As opposed to a full or partial surrender for an immediate cash

payment, the Annuity also offers Debtors a number of term payout options

from which to select, which "options may be arranged with [Allianz's]

written agreement."  *Id*.  In the event Debtors did not elect a payment

option by April 15, 2021, the Annuity provides that payments would be

made to them via "Installments for Life with a Guaranteed Period".  *Id*.

MEMORANDUM OF DECISION – 4

Under this program, Debtors would receive a set monthly payment for life, with a guaranteed minimum period of ten years.  *Id.*

In their bankruptcy schedule C, Debtors claimed the Annuity was exempt pursuant to Idaho Code § 41-1836(1)(b) for the full amount of $25,000.  Dkt. No. 1 at 18.  Trustee filed a timely objection to the exemption claim on September 20, 2011.  Dkt. No. 17.

### *Analysis and Disposition*

### I.

Idaho Code § 41-1836(1) provides, in relevant part:

> **41-1836.  Exemption of proceeds — Annuity contracts — Assignability of rights. —** (1) The benefits, rights, privileges and options which under any annuity contract heretofore or hereafter issued are due or prospectively due the annuitant, shall not be subject to execution nor shall the annuitant be compelled to exercise any such rights, powers, or options, nor shall creditors be allowed to interfere with or terminate the contract, except:
> * * * * *
>
>> (b) The total exemption of benefits presently due and payable to any annuitant periodically or at stated times under all annuity contracts under which he is an

MEMORANDUM OF DECISION – 5

annuitant, shall not at any time exceed one thousand two hundred fifty dollars ($1,250) per month for the length of time represented by such installments, and that such periodic payments in excess of one thousand two hundred fifty dollars ($1,250) per month shall be subject to garnishee execution to the same extent as are wages and salaries.

(c) If the total benefits presently due and payable to any annuitant under all annuity contracts under which he is an annuitant, shall at any time exceed payment at the rate of one thousand two hundred fifty dollars ($1,250) per month, then the court may order such annuitant to pay to a judgment creditor or apply on the judgment, in installments, such portion of such excess benefits as to the court may appear just and proper, after due regard for the reasonable requirements of the judgment debtor and his family, if dependent upon him, as well as any payments required to be made by the annuitant to other creditors under prior court orders.

* * * * *

(3) An annuity contract within the meaning of this section shall be any obligation to pay certain sums at stated times, during life or lives, or for a specified term or terms, issued for a valuable consideration, regardless of whether or not such sums are payable to one (1) or more persons, jointly or otherwise, but does not include

MEMORANDUM OF DECISION – 6

> payments under life insurance contracts at stated
> times during life or lives, or for a specified term
> or terms.

Under this Idaho statute, then, annuity "benefits" that are "due or

prospectively due" are exempt from the reach of the annuitant's creditors

(as well as a bankruptcy trustee), but the exemption is limited to $1,250 per

month for any benefits "presently due and payable to any annuitant

periodically or at stated times ." Idaho Code § 41-1836(1)(b). An annuitant

may seek to protect more $1,250 per month in benefit payments, but only

upon a showing of need. Put another way, presumably, annuity benefit

payments to an annuitant in excess of the statutory cap are not exempt,

and are vulnerable to the claims of the annuitant's creditors.

Because Trustee is the objecting party, he bears the burden of

proving that Debtors have not properly claimed the exemption in the

Annuity. Rule 4003(c); *In re Nielsen*, 97.4 IBCR 107, 107 (Bankr. D. Idaho

1997). Once Trustee has introduced sufficient evidence to rebut the prima

facie validity of the exemption, the burden shifts to Debtors to demonstrate

that their claimed exemption is proper. *In re Hess*, 350 B.R. 882, 885 (Bankr.

MEMORANDUM OF DECISION – 7

D. Idaho 2005); *In re Nielsen*, 97.4 IBCR at 107.  The validity of a claimed

exemption is determined as of the petition date.  11 U.S.C. § 522(b)(3)(A); *In

re Yackley*, 03.1 IBCR 84 (Bankr. D. Idaho 2003).

      In this case, at the hearing, Trustee explicitly conceded that the

Annuity is an "annuity" as defined in Idaho Code § 41-1836(3).  Even so,

Trustee contends that Debtors' potential benefits under the Annuity are not

exempt under these facts.  It is his view that, in order for an annuity to

qualify for exempt status under the Idaho statute, Debtors must have (in

the Trustee's parlance) "annuitized" the Annuity by electing some sort of

payout option under the contract.  Because Debtors had not taken this step

on the date they filed their bankruptcy petition, Trustee argues that the

exemption provided under Idaho Code § 41-1836(1)(b) does not apply in

their case.  Of course, Debtors disagree.  Therefore, as presented by the

parties, the issue in this case is whether a debtor must have selected an

annuity payout option in order to exempt any payments, or prospective

payments, under Idaho Code § 41-1836(1).  This question appears to be one

MEMORANDUM OF DECISION – 8

of first impression in Idaho.[4]

## II.

The Court begins its analysis by considering the text of Idaho Code § 41-1836(1).  The statute's language provides some guidance on its meaning.

First, the statute expressly protects a debtor's "benefits, rights, privileges and options" under annuity contracts, and not the contract itself. In other words, to give effect to this language, mere ownership of an annuity is not enough to qualify that annuity as exempt under the statute. Instead, it is the debtor's rights or benefits under the annuity contract which can be exempt.

Next, under Idaho Code § 41-1836(1)(b), the exemption applies to benefit payments both due and prospectively due.  Thus, any argument that a debtor must be currently receiving payment under an annuity contract in order to invoke the exemption would be at odds with the words

---

[4]  Though at least a dozen other states have enacted similar annuity exemption statutes, the Court's research located no cases on the issue framed by the parties in this case.

MEMORANDUM OF DECISION – 9

of the statute.  Put another way, for the exemption to apply, it is sufficient

that the debtor has either a current right to receive benefit payments, or the

prospective right to such payments.

However, while the exemption applies to benefit payments not yet

payable to the debtor, the statute makes clear that the extent of the

exemption in those payments is limited.  The exemption is capped at $1,250

per month "for the length of time represented by such installments."

Idaho Code § 41-1836(1)(b).  If the debtor's benefit payments exceed $1,250

per month, then a court may order the debtor to pay the excess to creditors

unless it determines that it is " just and proper, after due regard for the

reasonable requirements of the judgment debtor and his family" that the

debtor retain the payments.  Idaho Code § 41-1836(1)(c).

In addition to the statutory language, the Court is guided in its

interpretation and application of this statute by its several prior decisions.

For example, in *In re Lang*, the Court considered the debtor's exemption on

an annuity under which debtor was receiving quarterly payments at the

time of the bankruptcy filing.  90 IBCR 307, 307 (Bankr. D. Idaho 1990).  In

MEMORANDUM OF DECISION – 10

rejecting the trustee's objection to the debtor's exemption claim, the Court

noted that Idaho Code § 41-1836 "provides, generally, for exemption of the

proceeds of annuity contracts.  According to Section 41-1836(b) [sic] an

annuitant is entitled to an exemption of proceeds received from the

annuity to the extent of $350[5] per month '. . . for the length of time

represented by such installments . . . .'" *Id*. at 308.  The Court in *Lang*

interpreted the statute to exempt the annuity payments, not the annuity

itself.  *See id.*  As noted above, this construction is consistent with the

language of the statute.

    In *In re Stratch*, 97.1 IBCR 5 (Bankr. D. Idaho 1997), a chapter 13 case,

the Court considered whether the debtor's right to receive an annuity

payment of $100,000 in a lump sum approximately six years after the

petition date was exempt.  97.1 IBCR at 5.  While the Court's analysis of the

extent of the debtor's exemption was dicta because the trustee's objection

to the claim of exemption was not timely, the Court stated that the "fact

---

    [5]  The monthly benefit exemption cap of Idaho Code § 41-1836(1)(b) was
$350 until 2001, when the statute was amended to increase it to $1,250.

MEMORANDUM OF DECISION – 11

[debtor] is entitled to only one payment does not mean the contract is not

an annuity contract.  The provisions of Idaho Code § 41-1836(1) apply and

the payment is exempt."[6]  *Id*.  However, the Court did not specify the

extent of the exemption, and noted that the issue was probably moot, as

the lump sum payment was not scheduled to occur during the term of the

chapter 13 plan.  *Id*.

In *In re Nielsen*, the debtor's annuity had been funded by the

settlement of a personal injury claim.  97.4 IBCR at 107.  The debtor was

entitled to receive an initial payment the month following the bankruptcy

filing, and then two more payments over the course of the next nine years.

*Id*.  In holding that a total of $350 per month was exempt from the petition

date until the termination of the annuity in 2006, the Court stated the

following:

> By enacting Idaho Code Section 41-1836,
> however, the Legislature of the State of Idaho has
> proclaimed its public policy to allow the recipient
> of any annuity the standard amount of $350.00
> per month for the life of the annuity without

---

[6] The *Lang* decision did not address the monthly cap on the exemption.

MEMORANDUM OF DECISION – 12

> regard to its necessity for the support of the
> annuitant or his or her dependents.  Thus, the
> Debtor is entitled to the sum of $350.00 per month
> for the life of the annuity.

*Id*. at 108.  As can be seen, in *Nielsen*, the Court applied the annuity

exemption to the debtor's right to receive payments that had not yet begun

as of the date of the debtor's bankruptcy.  However, the Court construed

the statute as limiting the exemption to the amount of the monthly cap to

be received by the debtor over the term of the annuity.  The Court denied

an exemption in any excess above the cap.

This sort of mathematical approach to quantifying the extent of the

exemption as to future payments was also applied in *In re Wilcox*, 2008 WL

450816 (Bankr. D. Idaho Feb. 15, 2008).  That case also involved an annuity

funded by the proceeds of a personal injury settlement.  *Id*. at *2.  Under

the contract, the debtor was entitled to receive set payments on specific

dates until she reached the age of 55.[7]  *Id*.  In fixing the extent of the

---

[7]  For the first two years, the debtor was entitled to monthly payments of
$500.  *In re Wilcox*, 2008 WL 450816 at *3.  She then became entitled to payments
roughly every five years, with the remaining annuity balance being paid at age
55.  *Id*.  In total, the debtor was to receive payments of $272,847.  *See id*.  She had

MEMORANDUM OF DECISION – 13

debtor's exemption, the Court multiplied $1,250 for each month from the

petition date until the debtor reached age 55. *Id*. at *4. Because the

remaining balance of the annuity was less than that figure, the Court

declared the entire annuity to be exempt. *Id*.

The case with facts closest to those presented here is *In re Harter*, 94

IBCR 2 (Bankr. D. Idaho 1994). There, the debtor worked for a company

that provided its employees a pension plan. *Id.* at 2. When debtor

concluded her employment with the company, she "rolled" her pension

funds into an annuity. *Id*. Under the terms of that annuity program, the

debtor's money was to remain invested for ten years, all the while accruing

interest. *Id*. When ten years had elapsed, the annuity provided that the

debtor could elect one of several repayment terms. *Id*. However, the

program also allowed the debtor to surrender the annuity prior to the end

of the ten year period, and receive the full value of the annuity, minus a

declining surrender charge. *Id*. The debtor was also permitted to take

partial withdrawals from the annuity account for a small fee. *Id*.

---

received $81,000 as of her petition date. *Id*.

MEMORANDUM OF DECISION – 14

In *Harter*, the Court held that the program was not a true annuity. *Id*. The Court found it significant that before the ten year period expired, the debtor had unfettered right to control the funds as she pleased, an investment much like the terms of an Individual Retirement Account. *Id*. at 2-3. The Court determined the debtor's annuity program was, in essence, "a tax-deferred savings plan, and not a true annuity." *Id*. The Court stated:

> [Idaho Code § 41-1836], by its terms applies only to an 'obligation to pay certain sums at stated times, during life or lives, or for a specified term or terms . . . .' Idaho Code § 41-1836(3). In 1998, when the contract matures and Debtor is required to elect a true annuity repayment scheme, the analysis may be different. At this time, however, since Debtor retains the unrestricted right to receive payment in whole or part of the funds on deposit, it is not an annuity for purposes of the exemption statute.

*Id*.

### III.

In this case, Trustee concedes that the Annuity qualifies under the definition of an annuity in the exemption statute. However, Trustee

MEMORANDUM OF DECISION – 15

contends that since Debtors have not elected a payout option for their

benefits, they are not entitled to an exemption.  At first blush, Trustee's

argument may appear contradictory.  Afer all, if Debtors' Annuity satisfies

the statutory definition, it would seem the only remaining issue to

determine is the extent to which Debtors' right to benefits under the

Annuity are exempt.

However, after further consideration, the Court concludes Trustee's

position has merit.  Effectively, the Court reached the same result via its

analysis applied in *In re Harter*.  As in that case, Debtors here invested

$25,000 in a financial vehicle which, while labeled an "annuity," grants

them complete freedom to recover the bulk of their investment whenever

they please before they are required to elect any term payout option.

While there are potential fees and penalties for their early withdrawal of all

or part the money they invested, until they commit to a payout term, or

April 15, 2021, Debtors can freely access the funds.[8]

---

[8] The Court is mindful that Paula indicated on the annuity contract
documents she intended the benefit payout to begin in "six or nine years."
However, the indisputable fact is that, as of the date of the bankruptcy

MEMORANDUM OF DECISION – 16

The Idaho exemption statute protects benefit payments "due or prospectively due," but only subject to the statutory cap. Idaho Code § 41-1836(1)(b). To be clear, the Court does not interpret this language to mean, for the exemption to apply, that the annuitant must be currently receiving a stream of payments at the time the bankruptcy filing occurs. On the other hand, the statute makes clear that a debtor's right to receive benefit payments is a limited one calculated based upon the amount of payments received, or to be received, by the debtor. Moreover, for bankruptcy purposes, a debtor's right to an exemption must be measured as of the date of the filing of the bankruptcy petition. Under the Code, and to give effect to the exemption statute's purpose of protecting a portion, but not necessarily all, of a debtor's right to receive annuity payments, the Court concludes that, for the exemption to apply, some sort of annuity benefit payment election must have been made by the debtor as of the date the bankruptcy petition is filed. Were this not the case, the mathematical calculation required by the exemption statute and employed by the Court

_____

filing, Debtors were instead free to "cash out" the annuity.

MEMORANDUM OF DECISION – 17

in *In re Nielsen* and *In re Wilcox* would be impossible.  In other words, if no payment election has been made, then the payment amount is unknown, as is the term of the annuity payout, and the Legislature's object of limiting the extent of the exemption can be subverted.  Simply put, if the exemption applies where no election has been made, annuities would quickly become a convenient means of shielding large sums by a debtor in financial straits, whether those monies are needed for the support of the debtor or not, all at the expense of the creditors.  If the Legislature intended that debtors have access to this sort of bankruptcy planning tool, it should say so clearly – the Court declines to interpret the exemption statute in a fashion encouraging abuse.

The Court acknowledges that the Annuity in this case provides a default payment mechanism if Debtors fail to choose some other payout by April 15, 2021.  The Court is unwilling to deem that provision the equivalent of an election.  In a case such as this, where Debtors effectively have the right to control access to the annuity funds until they make an election, the potential for miscalculation of the proper cap on the exemption on the

MEMORANDUM OF DECISION – 18

Court's part would be high.

The Court also appreciates that, in this case, given the $25,000 value of the Annuity, had Debtors so elected, it would only take approximately twenty months at $1,250 per month to pay the Annuity out completely, all of which payments would have qualified as exempt. Indeed, because of the relatively modest amount invested, benefit payments would be exempt under nearly any sort of monthly payout allowed under the Annuity. Nevertheless, Debtors made no election, and are thus free to receive a lump sum of the near-total amount they invested tomorrow if they choose. The Court doubts this tactic would be condoned by the Idaho Legislature.

Debtors contend that by effectively compelling them to make a binding election for an annuity payout prior to their bankruptcy filing, the Court ignores that portion of the statute which provides, "nor shall the annuitant be compelled to exercise any such rights, powers, or options [under the annuity contract]." Idaho Code § 41-1836(1). But Debtors fail to acknowledge that the limitations on the annuity exemption contained in the statute, and the method of calculating the extent of the exemption

MEMORANDUM OF DECISION – 19

selected by the Legislature, constitute an express exception to the clause quoted by Debtors ("nor shall the annuitant be compelled . . . etc. . . . except . . . . "). Until Debtors make a payout election, there is simply no means by which the extent of their exemption rights can be quantified. That is a problem of Debtors' creation; the Court has merely highlighted the deficiencies in their approach.

### *Conclusion*

The Court acknowledges that in Idaho, exemption statutes are to be liberally construed in favor of the debtor. *In re Moore*, 05.3 I.B.C.R. 51, 51 (Bankr. D. Idaho 2005) (citing *In re Duman*, 00.3 I.B.C.R. 137, 137 (Bankr. D. Idaho 2000)). Nevertheless, the Court cannot read Idaho Code § 41-1836(1) so liberally as to allow Debtors to essentially use an annuity contract as a bank account protected from the reach of their creditors. Debtors in Idaho may exempt funds invested in annuities under the Idaho statute, but it is clear that, absent a showing of need, their exemption right is limited. To qualify for the exemption, Debtors must demonstrate that their right to receive an annuity payout, either current or prospective, does not exceed

MEMORANDUM OF DECISION – 20

the statutory cap, or they risk having creditors or the bankruptcy trustee be

able to reach those funds.  In this case, Debtors, by making no payout

election under the Annuity at all, effectively reserved to themselves the

right to access any or all of their investment at any time.  This approach is

at odds with the limited exemption rights provided in the Idaho Code.

Trustee's objection to Debtors' claim of exemption will be sustained,

and Debtors' claim of exemption disallowed, by separate order.

Dated:  April 3, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 21